# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**THOMAS GWINN JR.,**
**Claimant Below, Petitioner**

**FILED**

December 19, 2017
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 17-0625** (BOR Appeal No. 2051736)
(Claim No. 2012032109)

**WINCHESTER MINE, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Thomas Gwinn Jr., by Reginald D. Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Winchester Mine, LLC, by Henry C. Bowen, its attorney, filed a timely response.

The issue on appeal is whether a spinal cord stimulator should be authorized. The claims administrator granted Mr. Gwinn a 5% permanent partial disability award on November 11, 2015.[1] On August 17, 2016, the claims administrator denied a request for a spinal cord stimulator. The Office of Judges reversed the November 11, 2015, decision and granted a 7% permanent partial disability award in its December 16, 2016, Order. In its Order, the Office of Judges also affirmed the August 17, 2016, claims administrator's decision. The Order was affirmed by the Board of Review on June 15, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Gwinn, an electrician, was injured in the course of his employment on March 23, 2012, while installing a motor in a mantrip. The employees' and physicians' report of injury

---

[1] This issue is not on appeal before this Court.

1

indicates he injured his back while installing a motor. The injury was listed as a sprain/strain to the back.

A thoracic x-ray taken on April 5, 2012, showed degenerative disc disease with no acute fracture. A lumbar x-ray showed no acute fracture. A cervical x-ray also showed no acute fracture. A cervical MRI taken April 19, 2012, showed a large disc herniation at C5-6 and resulting central canal stenosis with spinal cord compression. There was also a relatively large paracentral disc herniation at C6-7. A lumbar MRI showed multilevel degenerative disc bulges with stenosis at L2-3 and L3-4 as well as foraminal stenosis at L2-3, L3-4, and L4-5.

The claim was held compensable for lumbar sprain/strain on April 27, 2012. On May 23, 2012, the claims administrator issued a decision that listed the accepted diagnoses as lumbar sprain/strain and cervical sprain/strain. Thoracic sprain/strain was later added as a compensable condition. Right paracentral disc herniation C5-6 with resulting central spinal canal stenosis, cord compression, and right neural foraminal stenosis; large right paracentral foraminal disc herniation at C6-7; L2-3 broad based disc bulge, L3-4 mild broad based disc bulge, and L4-5 board based disc bulge were rejected as compensable conditions.

On July 28, 2012, a thoracic MRI showed compression deformities of the vertebrae, posterior element disruption or malalignment, acquired disc herniations at T4-5 and T6-7 contributing to neural impingement and central canal stenosis, and central spinal canal stenosis on a congenital basis from T4 to T11 as a result of congenitally short pedicles.

Paul Bachwitt, M.D., performed an independent medical evaluation on August 24, 2012. He diagnosed cervical sprain/strain with herniated discs at C5-6 and C6-7, a lumbar sprain/strain superimposed on preexisting degenerative disc disease, and spondylosis of the cervical and lumbar spine. He thought it would be reasonable for Rajesh Patel, M.D., to perform a spinal fusion at C5-6 and C6-7 due to the compensable injury. Mr. Gwinn had not improved with conservative treatment and had not yet reached maximum medical improvement.

On July 15, 2012, Saghir Mir, M.D., performed an independent medical evaluation in which he listed the compensable conditions as lumbar and cervical sprain/strain. He diagnosed status post-operative anterior discectomy at C5-6 and C6-7 and lumbosacral sprain superimposed on preexisting degenerative changes. Dr. Mir found Mr. Gwinn to be at maximum medical improvement. He stated that he needed a couple of follow-up visits for his neck surgery and Hydrocodone for pain. Dr. Mir noted that Mr. Gwinn reported thoracic spine symptoms but that the condition was not allowed in the claim. He assessed 25% impairment representing 21% for the cervical spine and 5% for the lumbar spine. The claims administrator granted a 23% permanent partial disability award on August 23, 2013. Mr. Gwinn had previously received a 2% award for a lower back injury.

Mr. Gwinn testified in a deposition on December 9, 2013, that he had a prior work-related lumbar spine injury in September of 1999. Prior to the compensable injury at issue, he had no neck or mid-back injuries and had undergone no treatment for this mid-back. Mr. Gwinn stated that he was pulling and yanking on parts on a motor when he felt a sharp pain in his mid

and lower back. Cervical symptoms began the next day. He stated that his condition slowly worsened and he underwent cervical fusion on October 11, 2012. He testified that he currently has stabbing and shooting pain in his mid-back, low back, buttocks, legs, and feet. Mr. Gwinn was currently receiving no treatment for the mid-back. He was receiving lumbar injections that provided 20% relief and said that Brian Yee, M.D., wanted to see about spinal stimulation.

In a January 7, 2014, independent medical evaluation, Robert Walker, M.D., assessed 25% cervical spine impairment. For the thoracic spine, he found 7% impairment for loss of range of motion. For the lumbar spine, he found 7% impairment. The combined total was 35% impairment.

Dr. Mir performed another independent medical evaluation on April 21, 2014, in which he diagnosed post-op anterior discectomy and fusion at C5-6 and C6-7. He said there was lumbosacral strain superimposed on preexisting degenerative changes. He noted that he had previously found Mr. Gwinn to be at maximum medical improvement and assessed 25% impairment. He stated that Mr. Gwinn should be seen for follow-up visits and weaned from Hydrocodone. He found no indication for a spinal cord stimulator in this claim. Dr. Mir reviewed Dr. Walker's evaluation and found that he did not consider the preexisting changes in the cervical spine and that his lumbar range of motion measurements were excessive.

In a June 12, 2014, addendum report, Dr. Walker clarified that Mr. Gwinn had 25% cervical spine impairment, 7% lumbar spine impairment, and 7% thoracic spine impairment. He subtracted 2% impairment for a prior award. His recommendation was therefore 34% whole person impairment for the compensable injury. A thoracic MRI taken August 15, 2014, showed degenerative disc disease, shallow disc protrusions at T4-5 and T8-9, and no evidence of significant central canal stenosis or neuroforaminal narrowing.

In an October 15, 2014, treatment note, Dr. Patel noted that Mr. Gwinn was seen for neck, mid-back, lower back, and leg pain. Dr. Patel thought spinal cord stimulation would be a good option for the lower back. On November 19, 2014, Dr. Patel noted that he was still having pain in his mid and lower back. The assessment was cervical post fusion syndrome, thoracic sprain, cervical sprain, lumbar sprain, lumbar disc bulging, thoracic disc bulging, and cervical and lumbar radiculitis. Mr. Gwinn was to continue the use of his TENS machine. On December 9, 2014, Mr.Gwinn presented with moderate to severe pain in his mid and lower back.

Dr. Mir performed an independent medical evaluation on December 30, 2014, and noted that the allowed conditions were cervical, lumbar, and thoracic sprain/strain. At that time, Mr. Gwinn refused to stand, so the examination was done while he was seated. He was noted to have mild, preexisting scoliosis in the thoracic spine. Dr. Mir diagnosed post anterior discectomy and fusion at C5-6 and C6-7. He opined that there was lumbosacral and thoracic strains superimposed on preexisting degenerative changes and probable old compression deformity from an old injury. Dr. Mir found Mr. Gwinn had not reached maximum medical improvement for the thoracic spine as he needed a set of epidural injections and one set of facet injections at T6-7. He recommended x-rays at T7 to see if there was an old compression injury. He recommended no further treatment for the lower back, including a spinal cord stimulator.

In a September 30, 2015, independent medical evaluation, Dr. Mir stated that Mr. Gwinn had reached maximum medical improvement. He had 23% impairment for the neck and lumbar spine. The thoracic and lumbosacral sprains were superimposed on preexisting, multilevel degenerative changes. The claims administrator granted a 5% permanent partial disability award for the thoracic spine on November 11, 2015.

In a treatment note dated November 25, 2015, Dr. Patel noted that Mr. Gwinn was still reporting severe pain in his neck, low back, and legs. Dr. Patel referred him to a pain clinic for epidural and facet injections. Treatment notes from Timothy Deer, M.D., dated March 16, 2016, indicate Mr. Gwinn reported pain in his neck and back that radiated into his legs. The pain had increased into his hip in the past six months. Dr. Deer recommended a spinal cord stimulator, injections, and a thoracic RFA procedure. A treatment note by Dr. Deer on July 1, 2016, indicates Mr. Gwinn was seen after bilateral thoracic injections. He reported 70-75% pain relief. He was awaiting approval of a spinal cord stimulator. Lisa Harris, PT, submitted a request stating that Mr. Gwinn was an excellent candidate for a spinal cord stimulator on July 21, 2016. Progress notes by Wilfriedo Tolentino, PA-C, on August 5, 2016, indicates Mr. Gwinn had lumbar facet and epidural injections without any relief. He concluded that Mr. Gwinn needs a spinal cord stimulator trial because he had already attempted physical therapy, and Dr. Patel also recommended the spinal cord stimulator. The claims administrator denied the request for a spinal cord stimulator on August 17, 2016.

The Office of Judges affirmed the claims administrator's decision denying a request for a spinal cord stimulator on December 16, 2016. The Office of Judges found that the claims administrator denied the request for a spinal cord stimulator because West Virginia Code of State Rule § 85-20 (2006) provides that spinal cord stimulators are only allowed when other treatments, like medication and physical therapy, have failed. Mr. Gwinn reported on July 1, 2016, that he had 70-75% pain relief from injections. The Office of Judges noted that he had prior lumbar spine injuries for which he had received a 2% permanent partial disability award. In the present claim, a spinal cord stimulator was first requested in 2013. The request was denied by the claims administrator and affirmed by the Office of Judges. That request was made by Dr. Yee for the diagnoses of lumbosacral neuritis, lumbosacral spondylosis, and lumbar spinal stenosis. The Office of Judges found at that time that the conditions were not compensable and were most likely the result of preexisting degenerative conditions. In the instant appeal, the request was made by Dr. Deer. At that time, Dr. Deer's notes indicate Mr. Gwinn was having pain in his legs and hips. A physical therapist note dated July 21, 2016, stated that Mr. Gwinn was an excellent candidate for a spinal cord stimulator but did not state the condition for which it was necessary. The Office of Judges found that Mr. Polentino recommended a spinal stimulator because lumbar injections failed and Dr. Patel recommended it. The Office of Judges noted that the claim is compensable for lumbar sprain/strain, cervical sprain/strain, and thoracic sprain/strain. The conditions of right paracentral disc herniation C5-6 with resulting central spinal canal stenosis, cord compression, and right neural foraminal stenosis; large right paracentral foraminal disc herniation at C6-7; L2-3 broad based disc bulge, L3-4 mild broad based disc bulge, and L4-5 broad based disc bulge were found to be noncompensable. The Office of Judges ultimately concluded that Mr. Gwinn failed to show by a preponderance of the evidence that a spinal cord

4

stimulator was necessary treatment for the compensable conditions. Instead, the evidence shows that the request was to treat conditions that preexisted the compensable injury. The Office of Judges also reversed the claims administrator's grant of a 5% permanent partial disability award and granted a 7% permanent partial disability award for the thoracic spine based on Dr. Walker's evaluation. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on June 15, 2017.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The claim has been held compensable for lumbar, thoracic, and cervical sprains/strains only. A spinal cord stimulator is not appropriate treatment for a sprain/strain. The stimulator was requested to treat noncompensable, preexisting conditions and was therefore properly denied.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 19, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum

5